PHILIP R. RAPUANO ET AL. *v.* CLARENCE G. AMES ET AL.

SUPERIOR COURT        NEW HAVEN COUNTY        FILE No. 87005

Memorandum filed June 25, 1958

*John J. Johnson* and *Raymond J. Doyle*, both of New Haven, for the plaintiffs.

*Edward F. Becker*, of New Haven, for the defendants.

MacDonald, J. This action, asking damages as well as an injunction and a decree requiring the defendants to remove a fence alleged to have been erected on defendants' land "maliciously and with intent to annoy and injure the plaintiffs in the use and disposition of their land," which adjoins that of defendants, differs in several respects from the traditional "spite fence" cases, but still, on its facts, falls within the provisions of §§ 8216 and 8311 of the General Statutes.

Section 8216 provides for the granting of an injunction against the "malicious erection" by the owner of land on his own land of any structure "intended to annoy and injure" the owner of adjacent land, while § 8311 provides a legal remedy in damages for the same kind of act, using only slightly different language. These two statutes have been on our books for about one hundred years and have been unchanged since 1875, but have been cited in comparatively few cases. *Walden* v. *Siebert,* 102 Conn. 353, treated a fence as a "structure," and *Gallagher* v. *Dodge,* 48 Conn. 387, at 391-395 early pointed out that the malicious purpose of the person erecting the structure must be the predominant one and must give character to the act. However, the leading Connecticut case on the subject appears to be *Whitlock* v. *Uhle,* 75 Conn. 423, which specifies the ingredients necessary to state a cause of action under the two statutes mentioned above as follows: (1) A structure erected on the owner's (defendant's) land; (2) a malicious erection of the structure; (3) the intention to injure the enjoyment of the adjacent landowner's land by the erection of the structure; (4) an impairment of the value of adjacent land because of the structure; (5) the structure useless to the defendant; (6) the enjoyment of the adjacent landowner's land in fact impaired.

Before searching for the above ingredients in the instant case, it would be helpful to narrow the issues as much as possible. Here the defendants have erected a tight board fence, well within their own boundary lines, along their southerly boundary, adjacent to Huntington Circle, a public way, and northerly for a distance of 138 feet from Huntington Circle along their westerly boundary, which is also the easterly boundary of plaintiffs' property. Defendants also plan to extend this fence along the remaining length of their westerly boundary, but stopped further construction when this action was started. Since it is conceded, for all practical purposes, that the only portion of the fence seriously objected to by plaintiffs is that extending along the defendants' westerly and the plaintiffs' easterly boundary, only that part will be considered in this decision.

The portion of the fence under consideration has been erected three feet east of the common boundary line of the parties, well inside defendants' own land, the smooth or finished part faces plaintiffs' property and has been painted an unobtrusive brown color, and defendants further planted evergreen trees and shrubbery on the three-foot strip of their own land between the fence and plaintiffs' property. On these facts, it is obvious that a deliberate malicious intention to injure plaintiffs' enjoyment of their property was not the primary motive behind the erection of the fence—nor was there any evidence of any spite or hard feelings between the parties that could point toward such motivation. Such elements of malice and intent to injure, therefore, must be found, if at all, from the very nature of the structure and its physical relationship to plaintiffs' enjoyment of their property.

The fence along Huntington Circle and for most of the distance along the boundary under discussion here was erected to a height of six feet four inches,

a high fence as fences in residential areas go in this part of the country but not a height that can be found so unreasonable to accomplish the announced purposes of defendants, namely to afford privacy for sunbathing and the enjoyment of a contemplated swimming pool, containment of dogs and the protection of shrubbery and plants, as to be considered primarily malicious and without useful purpose. However, at a point directly beside plaintiffs' dwelling house, at a distance of less than twenty feet therefrom, and continuing for practically the identical depth of plaintiffs' dwelling house, the fence rises rather abruptly to a height of nine feet three inches above the ground level at its base. Defendants claim that the purpose of this method of construction was to give a uniform level to the top line of the fence—without regard to dips or rises in the ground level—but the actual result, as is apparent from the photographs in evidence, and especially from the actual viewing of the premises by the court, is a rather vast expanse of board fence three feet higher along the east wall of plaintiffs' house than at any other point of its entire extent. The very height of the structure at this point, rather than its color or manner of construction, makes it unsightly from the plaintiffs' side, and the additional three feet in height above the ground level directly opposite the windows of the two bedrooms located on the east side of plaintiffs' house inevitably, at a distance of less than twenty feet, shuts off some light and air from those rooms, even though there was no evidence that it shut off the direct rays of the sun at any specific hour of the day. Since the height of six feet four inches above ground level is considered sufficient to afford defendants the privacy and other protection they desire at all other points, it is difficult to see how an additional height of approximately three feet serves a useful purpose at this

point—unless directed specifically against these plaintiffs and against no one else.

Returning now to the six ingredients necessary to state a cause of action, as mentioned in *Whitlock* v. *Uhle,* supra, and as listed above, we undoubtedly have here (1) a structure erected on defendants' land, (4) an impairment of the value of the adjacent (plaintiffs') land, and (6) some impairment of the enjoyment of plaintiffs' land. With respect to (5), that portion of the fence which rises to a height of more than six feet four inches above the ground level is found to be useless to the defendants. This leaves (2) and (3), a "malicious erection of the structure" and "the intention to injure the enjoyment of the adjacent landowner's land," and it would appear that these elements can be found from the physical facts without other evidence of malice, ill will or harmful intent. This is clearly pointed out by our Supreme Court in *Whitlock* v. *Uhle,* supra, 427, 428, where the following language appears: "We think it follows from this purpose of the Act, and from the conditions which define and limit this exception or new right and duty incident to the ownership of land, that the intent to injure by the erection of the structure is an intention which must be discovered mainly from the fact that the structure does impair the value of adjacent land and injure the owner in its use, from the absence of the reasonable possibility of any real advantage, whether of profit, protection, or pleasure, in the use of the land, and from the character, location and surroundings of the structure itself. It is quite possible for a structure to bear on its face, as it were, convincing evidence that it was intended for a legitimate purpose, or that it was intended to injure the adjacent land and its owner. Such intention relates to the thing done, its purpose and effect, and does not depend on the existence or nonexistence of personel spite or ill-will.

The intention is not the motive from which it may have sprung, but the established purpose, from whatever motive, to use the land in a manner not justified by its ownership, and forbidden by law. When a structure, useless to the owner, injuring adjacent land and its owner, intended to work such injury, is wilfully erected, it is maliciously erected; that is, it is erected in knowing disregard of the law and the rights of others. . . . Possibly the ill-will of the wife, and the extent to which it may have been shared by the husband, may have had some evidential weight, but neither the spite of the wife towards the plaintiff, nor the adoption of that spite by the husband, was essential to a malicious erection by the defendant. As we have said, the court having found that the structure impairs the value of the plaintiff's land, serves, and was erected to serve, no purpose in the use and enjoyment of the defendant's land, is of a description, location and surrounding indicative of a controlling purpose in its erection to injure the plaintiff, and does in fact injure the plaintiff in the use of her land, there is no legal barrier to the finding necessary to support the judgment, to wit, that the structure was maliciously erected with intent to annoy and injure the plaintiff in the use of her land."

In other words, the question whether a structure was maliciously erected is to be determined rather by its character, location and use than by an inquiry into the actual motive in the mind of the person erecting it. *Gallagher* v. *Dodge,* 48 Conn. 387, 393. Elements (2) and (3), discussed above, are found from the physical fact of the additional three-foot height directly beside plaintiffs' home.

There was no adequate proof of water damage to plaintiffs' property resulting from the structure in question, nor of other damage to value that could not be restored by the injunctive relief to be granted, and accordingly no money damages are awarded to

plaintiffs. The prayer for an injunction is granted with respect only to that portion of defendants' westerly fence rising to a height of more than six feet four inches above ground level, and the defendants are accordingly hereby enjoined from erecting, maintaining or permitting to remain, along the westerly border of their land or within that distance thereof forbidden by the applicable zoning and building laws of the town of Hamden pertaining to side yards and rear yards, any structure rising to a height of more than six feet four inches above the ground level at the base of the fence.