[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action seeking injunctive relief under General Statutes 52-480[1] to compel the defendants to discontinue and remove a fence erected by the defendants along with their common property line with the plaintiff.
The complaint is in two counts, in both of which Marie R. Horan ("Mrs. Horan") is the plaintiff. The first count is directed against the defendants W. Michael Farmer and Barbara J. Farmer, and the second count is against the defendants Astrid Farmer and Eugene Farmer. Mrs. Horan has owned the premises known as 70 Shorelands Drive in Madison since 1985, having received the title from her mother, Louise R. Rocco, at that time.[2] Marie Horan has lived in the house on these premises for about forty years except for sometime when she was attending school and when she was first married in 1967. She and her husband, Timothy Horan, have lived there since 1970. The defendants W. Michael Farmer and Barbara J. Farmer are the owners of record of the premises known as 80 Shorelands Drive in Madison which is just southerly of the Horan premises. The northerly boundary of the Farmer premises is by deed two hundred and eighteen feet, more or less, and it is the common boundary with the southerly boundary of the Horan premises for that distance. The defendants, Astrid Johnson and Eugene Johnson, have occupied the Farmer premises with the consent[3] of the Farmers, having first moved into the house on the premises in January 1985. The Johnsons are the parents of Barbara F. Farmer and the in-laws of W. Michael Farmer, her husband.
On or about June 25, 1990, the Johnsons erected a tight stockade fence approximately six feet high for a distance of about ninety-six feet along their southerly boundary. Later, on or about July 25, 1990, they added another section of stockage fence, about one-hundred and four feet in length, along their southerly boundary. None of the defendants contacted or communicated with the plaintiff concerning the erection of the fence. While more will be said hereinafter, it is noted that the dwelling house on both the property of the plaintiff and the defendants both face southerly on Long Island Sound with the defendants' property being closer to the Sound than that of the plaintiff.
The plaintiff alleges and all the defendants deny the following allegations in each count: That during the plaintiff's ownership of 70 Shorelands Drive and at all times prior to the erection of the fence, the plaintiff was afforded an unobstructed view of the Long Island Sound from her property; that the fence has been erected maliciously and with the intent to annoy and injure her in the use, enjoyment and disposition of her property; that the defendants have demonstrated the malicious nature of the CT Page 2414 fence in that the fence has been constructed in a manner such that until the week of July 23, 1990, it extended across only the portion of the defendant's southerly boundary line which formerly allowed her a view of the Long Island Sound in that it totally and completely obstructs the view of the Long Island Sound previously afforded from her property; in that the unsightly interior of the fence has been placed in such a manner as to be exposed to her property rather than that of the defendants and in that it is constructed in such a manner that its height and location do not serve any useful purpose of the defendants.
At the trial a number of witnesses testified and the court was presented with issues of credibility. The trier of fact determines the credibility of witnesses and the weight to be given to their testimony. McNamee v. Woodbury Congregation of Jehovah's Witnesses, 194 Conn. 648, 48, 484 A.2d 940 (1984); Robert Lawrence Associates Inc. v. DelVecchio, 178 Conn. 1, 14, 420 A.2d 1142
(1929). It may also draw reasonable inferences from the evidence. In re Juvenile Appeal (82-AB) 188 Conn. 557, 561, 452 A.2d 113
(1982). The trier may believe all or part of a witness' testimony. Gutowski v. New Britain, 165 Conn. 50, 56,327 A.2d 552 (1979). The weight to be given all the evidence is for the trier. Swift Co. v. Rexton, 187 Conn. 540, 543, 447 A.2d 9
(1982). The exhibits admitted included some nineteen photographs, several of which were enlargements.
The plaintiff claims that she is entitled to relief under52-480 because the defendants' conduct in building the fence constitutes a malicious erection of a structure under this statute. She argues that the evidence satisfies the necessary elements for such relief as set out in DeCecco v. Beach, 174 Conn. 29,38, 381 A.2d 543 (1977), and among others, Whitlock v. Uhle,75 Conn. 423, 53 A. 891 (1903). She maintains that, based on her familiarity with the premises involved since the 1950's, she has shown that there has never been any "structure" as presently exists and that she has had over these years an unobstructed view of Long Island Sound which this fence now precludes. Further, she maintains that her hitherto unobstructed view enhanced the value and the use of her property whereas now the fence adversely effects not only its value but also its use and enjoyment. She considers the fence "ugly." In pressing her claims, she also contends that it is significant that the defendants have not erected this fence until several years after they purchased and occupied their property. To the defendants' claim that they erected this fence for their privacy, the plaintiff counters that their claim of privacy, even if meaningful to them, is only of an incidental nature under the circumstances and cannot, under the circumstances, be permitted to nullify the statutory purpose of52-480. She asks for an order that the fence be disassembled. CT Page 2415
On the other hand, the defendants maintain that DeCecco and Whitlock are each distinguishable on their facts from this case. They dispute the claim that this fence is a "structure" that was maliciously erected and relief is not to be given as prayed under52-480. In doing so, they contend that the malice to be considered is not bad feeling per se, but must take into consideration such things as the location of the fence, its character and the uses to which they can put their property. They argue that the location and height of the fence is reasonable. They also claim that they had good reason to erect it for not only their privacy but because of certain recent incidents of vandalism to their property. The defendants also indicate that the fence serves to protect their property. The fact that they have not erected any structure since they purchased the property until the fence was recently erected is, they claim, not significant because they have the inherent right to use their property in privacy.
Having set out the claims of the parties, it will be useful at this point to set down some additional facts better to understand the application of the relevant law in the determination of these claims. Others will be set out later as discussion so requires. There is no plot plan in evidence that shows the location of the houses of the plaintiff and the defendants on their respective properties. There is, however, a 1964 land survey that shows the bounds together with the footage of the two properties, as well as the deeds by which the parties obtained their present title. Certain credible testimony also involved relevant distances. The plaintiff's property is immediately to the north of that of the defendants. According to the 1964 survey, it is bounded on the east by Shorelands Drive for a distance of about one hundred and seventy-five feet, on the south by its common boundary with the defendants for a distance of about two hundred and eighteen feet, on the west by land now or formerly of Taraich for a distance of about one hundred and seventy-five feet, and on the north by a lot #13 on a recorded map a distance of about two hundred and twenty two feet. The defendants' property, which is somewhat irregularly shaped, is, on the same survey, bounded generally on the east in part by Shorelands Drive and a parking area a distance of about two hundred and sixty feet, then generally easterly by a ten foot right of way a distance of about ninety five feet, then easterly again by this right of way a distance of about one hundred feet on the south by a creek or tidal ditch a distance of about ninety-six feet, and on the west by land nor or formerly of Taraich for a distance of about three hundred and sixty-six feet and on the north by the plaintiff's property by a distance of about two hundred and twenty two feet. At this point at least three things can be visualized: The plaintiff's southerly bound and the defendants' northerly bound are coincident or coterminous, their westerly bounds traverse the same straight lines, the plaintiff's CT Page 2416 land is immediately north of that of the defendants. It is noted that the defendants' property, although closer to Long Island Sound than the plaintiff's does not bound on the Sound but on a creek or tidal ditch, about fifteen feet in width which is spanned by a footbridge. The creek, in turn, bounds south on a timber bulkhead on the south side of which is the beach area and then Long Island Sound. The land of both parties is generally on the same grade, level and flat. The defendants' land, on its southerly portion, slopes a "bit" toward the beach.
The plaintiff's house has nine rooms and a three-room apartment where her mother lives. The house was built in 1952. The house faces southerly toward Long Island Sound. The first floor has a kitchen, dining area, dining room, family room and den. Bedrooms are upstairs. There is a front porch as well as an outside patio. There is a lawn area southerly of the house to the plaintiff's southerly boundary.
The defendants' house, Mrs. Johnson testified, was about ninety feet long (from east to west) and about thirty feet wide. This house which was constructed in 1965 sits back about thirty feet from Shorelands Drive and the back of this house is about one hundred and seventy feet southerly of the plaintiff's southerly property line. In addition, Mrs. Johnson said that the distance northerly from the fence in question to the plaintiff's patio is about seventy-five feet. The defendants' "best" view of Long Island Sound, she also said, is from the southwesterly part of their property.
Certain photographs in evidence graphically depict the position of the plaintiff's and defendants' house, not only in relation to each other, but also as to their view of Long Island Sound. Both houses face southerly on Long Island Sound. As one looks northerly at both houses together from a position southerly of both, it is quite clear that the plaintiff's house is situated completely much closer to is westerly boundary on the former Taraich property than the defendants' house is on its property. Also as one looks northerly at both houses from a position southerly of both houses, it is also quite clear that if one visualized an imaginary line from the extreme westerly side of the defendants' house going directly northerly over the plaintiff's property, that line would intersect the northerly boundary of the plaintiff's property some distance easterly (toward Shorelands Drive) of the easterly extremity of the plaintiff's house. The location and positioning of both houses is, therefore, such that there was, prior to the erection of the fence, an unobstructed view of Long Island Sound from the plaintiff's house, particularly from the first floor and the patio, directly southerly over the lawn area of the plaintiff and the lawn area of the defendants' (westerly of the defendants' house) to Long Island Sound. The CT Page 2417 photographs in evidence included photographs of the property of both parties taken before as well as after the erection of the fence involved.
It will be useful at this point to set out certain principles of law that are relevant to the issues. General Statutes 52-480
has been on our statute books for over one hundred years and has been unchanged since 1875. The statute in 52-480, being in derogation of the common law, must be strictly construed in favor of the party erecting it. Whitlock v. Uhle, supra, 426. Section52-480 has been cited in comparatively few cases over the years. Whitlock v. Uhle, 75 Conn. 423, 53 A. 891 (1903), appears to be our leading case on the subject, although some earlier cases do refer to a quite similar statute. Whitlock and its progency, sparse as it is, read in context require that a cause of action under 52-480 include in this case the following factors: (1) a structure erected on the defendant owner's (defendant's) land, (2) the malicious erection of that structure, (3) the intention to injure or annoy the enjoyment of the adjacent landowner's (the plaintiff's) land because of the structure, (4) an impairment of the value of the adjacent land (plaintiff's) because of the erection of the structure, (5) the enjoyment of the adjacent land (plaintiff's) is in fact impaired, and (6) the structure is useless to the defendant who erects the fence. See Whitlock v. Uhle, supra DeCecco v. Beach, 174 Conn. 31, 381 A.2d 437 (1977); Rapuano v. Ames, 21 Conn. Sup. 110, ___ A.2d ___ (1958): see also Gallagher v. Dodge, 48 Conn. 387 (1880); Harbison v. White, 46 Conn. 106
(1878).
Whitlock, specifically, said that because of the statute ". . . a new exception is made to the absolute power of disposition involved in the ownership of land, as well as to the absolute submission involved in that ownership to the chances of damage incident to the use by each owner of his own land." Whitlock v. White, supra, 426-427. The Whitlock court indicated that under this new exception that:
 ". . . the intent to injure by the erection of the structure is an intention which must be discovered mainly from the fact that the structure does impair the value of adjacent land and injure the owner in its use, from the absence of the reasonable possibility of any real advantage, whether of profit, protection, or pleasure, in the use of the land, and from the character, location and surroundings of the structure itself. It is quite possible for a structure to bear on its face, as it were, convincing evidence that it was intended for a legitimate purpose, or that it was intended to CT Page 2418 injure the adjacent land and its owner. Such intention relates to the thing done, its purpose and effect, and does not depend on the existence or non-existence of personal spite or ill-will. The intention is not the motive from which it may spring, but the established purpose, from whatever motive, to use the land in a manner not justified by its ownership, and forbidden by law. When a structure, useless to the owner, injuring adjacent land and its owner, intended to work such injury, is willfully erected, it is maliciously erected; that is, it is erected in knowing disregard of the law and the rights of others."
Ibid., 427; see DeCecco v. Beach, supra, 32. In DeCecco, our Supreme Court drew upon Whitlock when it said "Whether a structure was maliciously erected is to be determined rather by its character, location and use than by an inquiry into the actual motive in the mind of the party erecting it." DeCecco v. Beach, supra, 32; Rapuano V. Ames, supra, 115. In terms of usefulness or not of the structure to the party erecting the structure involved, the DeCecco court said that ". . . once it is established that malice was the primary motive in its erection, the fact that it also served to protect the defendant's premises from observation must be regarded as only incidental, since to hold otherwise would nullify the statutes [52-480, 52-570]." Harbison v. White,[4]
[46 Conn. 106, 108] see 5 Powell, Real Property 696, p. 280 (1949 Ed. 1977 Rev.)." DeCecco v. Beach, supra, 32-32.
There is no question but that this fence is a "structure" under the statute. Whether its erection was "malicious" requires analysis of the character, location and use rather than by an inquiry into the actual motive in the mind of the party erecting it. The resolution of this aspect requires that further facts be set out. In doing so, it is well to remember that while "it is quite possible for a structure to bear on its face, as it were, convincing evidence that it was intended for a legitimate purpose, or that it was intended to injure the adjacent land and its owner," that "such intention relates to the thing done, its purpose and effect, and does not depend on the existence of personal spite or ill will." Whitlock v. Uhle, supra, 427 (emphasis added); see DeCecco v. Beach, supra, 32. The fence which appears to be of uniform height extends along almost all of the common boundary of the parties. The posts, sunken in the ground, as well as the cross pieces to which the stockade sections are fastened, face the plaintiff's land and not the defendants' property. The plaintiff and her husband entertain frequently and for that purpose use their house, particularly the patio and front porch. This entertaining has included on occasion political fundraisers, the most recent being in July 1990 at which between CT Page 2419 seventy-five and one hundred people were present. In June 1990, the plaintiff and her husband had a graduation party for their daughter Amy. There have been other occasions when the plaintiff and her husband have entertained at some of which three persons have assisted in serving guests. There is, however, no evidence that the defendants have ever complained to the plaintiff or her husband of annoyance to them because of such entertaining.
The view from the patio of the Sound has been "uninterrupted." The plaintiff's family is in and about the patio, porch, and southerly side of the house "just about all of the time." That side is used as much as it is because of the view it had afforded of the waters of the Sound. The plaintiff and her family reside at this house the year round. Prior to the erection of the fence the defendants' back yard and westerly yard were in full view of the plaintiff at all times.
Prior to moving into the house the defendant Eugene Johnson, and his wife Astrid Johnson,[5] had lived in this neighborhood since 1948. The Johnsons are the only ones who lived in their house on a regular basis and they have "very little company." Mrs. Johnson maintained that prior to the erection of the fence they could not fully use their property, particularly the "westerly yard" as they had no privacy, that they could not go outside without seeing the plaintiff's guests and that they really did not get the use out of it. About May 13, 1990, the Johnsons planted about ten white pine trees, about six or seven feet tall, on the southerly portion of their property and about ten feet in from their northerly line. This was done, Mrs. Johnson said, for purposes of their privacy. Upon their return, about a week later, from a trip to Virginia, she with her husband discovered that nine of these trees had been chopped off at two or three feet from the top. Shortly thereafter, around June 12, 1990, Mrs. Johnson discovered that the trees were completely gone: they had been severed to ground level. The Johnsons hired a surveyor who staked out their northerly line and, thereafter, the ninety-six foot section of the fence was erected on June 25, 1990. Shortly thereafter, all the flowers in a large planter located at the foot of their driveway had been taken. Some of the stakes were found to be "gone." After the first section of the fence was up and during the first week of July 1990, flowers around a lamp post at the end of their driveway were "gone" and "another bush" was taken.[6] On July 6, 1990, the defendants planted ten new white pine trees along their northerly line with the plaintiff, but on their (defendants') side of the fence. It is interesting to note that the defendants also argue that this recent vandalism is another reason for erecting the fence; yet there is no evidence even to reasonably infer who was responsible for this vandalism. Mrs. Johnson admits that the fence partly obstructs the view of the Sound from the plaintiff's patio but she maintains that the CT Page 2420 plaintiff has some view of the Sound from her kitchen, den and porch. She does not know if the fence as erected affects the value of the defendants' property.
As already pointed out, none of the defendants told the plaintiff or made her aware that a fence was to be erected. It would appear from the evidence that the most recent time prior to this litigation that there was any "contact" between the parties was in January 1990. At that time the defendants had filed a petition seeking a variance from Madison zoning authorities to permit them to build a smaller house on that portion of their property, westerly of their present house, in that area so-called the westerly or west yard. The petition involved the lawn area which, prior to the erection of the fence, offered the plaintiff the view of the Long Island Sound she asserts the fence has obstructed. A hearing was held on the petition. The plaintiff retained an attorney and objected to granting the variance. The petition for variance was denied and there is an appeal pending from the denial.[7]
DeCecco, drawing on Whitlock, says that "The intent to injure is determined mainly from the fact that the structure does impair the value of the defendant land and injure the owner in its use, from the absence of any real usefulness of the structure, . . . to the defendant, and from the character, location and surroundings of the structure itself; and, once it is established that malice was the primary motive in its erection, the fact that it also served to protect the defendant's premises from observation must be regarded as only incidental, since to hold otherwise would be to nullify the statutes. . . ." DeCecco v. Beach, supra, 32-33; Whitlock v. Uhle, supra; Harbison v. White, supra, 109 (emphasis added).
The fence has impaired the value of the plaintiff's property. The plaintiff produced the witness Judith Fowler, a full-time real estate appraiser of about thirteen years experience, who has completed a number of appraisal courses and who has testified in the Superior Court as such an appraiser between forty and fifty times. "The credibility of expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." Ferri v. Pyramid Construction Co., 186 Conn. 682, 690, 443 A.2d 479 (1982). Expert opinion must be evaluated in the light of the expert's opportunity to come to a reasonable conclusion. Daley v. Plourde, 170 Conn. 482,487, 365 A.2d 1148 (1976). Fowler examined the plaintiff's property, both house and land, after the fence was up and she also had available to her photos of the property taken prior to erection of the fence. Fowler also observed the plaintiff's property from the beach. In addition she also considered CT Page 2421 properties she considered comparable to that of the plaintiff. View is "very important" in an appraisal of this type of property as buyers pay "substantial amounts" for view. Acknowledging that the real estate market has been off in this area for about the last couple of years, Fowler opined that, nevertheless, the market was not off for this type of property as much as for other types of real estate. It was her opinion that prior to the erection of the fence the plaintiff's property had a value of about one million dollars. It was also her opinion that the obstruction in view because of the fence required a decrease in her opinion of "pre-fence value" of a minimum of ten percent which discount she characterized as "fairly conservative." This court credits Fowler's testimony and concludes that the erection of the fence has impaired the value of the plaintiff's property.
As to the matter of the fence injuring the plaintiff's use and enjoyment of her property, what has been said earlier in the opinion leads this court to conclude that it has injured such use and enjoyment by the plaintiff.
As already noted, there is no question but that the fence installed by the defendants is a "structure." See General Statutes 52-480. Further, "whether a structure has been maliciously erected is to be determined rather by its character, location and use than by an inquiry into the actual motive in the mind of the party erecting it." DeCecco v. Beach, supra, 32 Whitlock v. Uhle, supra, 427: Gallagher v. Dodge, supra, 393: Rapuano v. Ames, supra 115 Foldeak v. Incerto, 6 Conn. Cir. 416, 428-429, A.2d (1970). The fence is located as close to the plaintiff's property as possible, closer than the pine trees cut down earlier and closer than the pine trees presently there. From the evidence, particularly the colored photos, several of which have been enlarged, the fence is unsightly and out of sync with its surroundings. The defendants Johnson, as noted, have lived in this neighborhood since 1948, including about six years at #35 Shorelands Drive. It is deemed fair to say that this fence which the defendants erected along the boundary line demonstrates that despite any plausible argument that it "bear[s] on its face, as it were, convincing evidence that it was intended for a legitimate purpose . . ." it was intended to injure the adjacent land and its owner. Whitlock v. Uhle, supra. "[That] intention [which bears on the issue of malicious erection or not] relates to the thing done, its purpose and effect, and does not depend on the existence or non-existence of personal spite or ill-will."[8] Ibid.; Rapuano v. Ames, supra, 114. Into ascertaining that intent also goes the use of as well as the "surroundings". DeCecco v. Beach, supra, 32; Whitlock v. Uhle, supra, 427; Scott v. Wilson, 82 Conn. 289,290, 43 A. 781 (1909). The use and surroundings of the fence have been discussed at some length above; that discussion is relevant here. The view of the waters of Long Island Sound which the CT Page 2422 plaintiff complains the fence now obstructs, is now being obstructed by the defendants by this fence; this enters into the character and purpose of the erection of the fence.
It is concluded that malice was the "primary motive"[9] (see DeCecco v. Beach, supra, 33) in erecting this fence. Having so concluded, the circumstance that it also may have served to "protect" the defendants' premises, particularly their westerly yard (or side yard) must be regarded as only incidental, "since to hold otherwise would nullify the statute." DeCecco v. Beach, supra.
The defendants' brief maintains that, analogizing this case to Gallagher v. Dodge, supra, they "have the right to use and occupy their side yard (west yard) between plaintiff's patio and Long Island Sound in a way most advantageous to them, and insofar as plaintiff was enjoying the open space to enjoy the view of Long Island Sound across defendant's property, she was doing so by mere sufferance, for defendants could extend their home, or place additions to their house, by way of additional rooms, deck, porches, patio and the like, and trees and shrubs in such manner as to completely block plaintiff's view of Long Island Sound, with no invasion of plaintiff's rights." Several comments may be made here. First, no authority is cited for this "mere sufferance" assertion. This includes such things as the citation of persuasive case law or permissible zoning law or regulation permitting such extensions, additions and the like. Second, there was no evidence adduced that the defendants had any intention of doing anything of that sort although it appears they would like to build a smaller house to the west of their present house. Third, the statute, i.e., 52-480, we have already noted, is not a judicially-created but a legislatively-created "new exception . . . to the absolute power of disposition in the ownership of land as well as to the absolute submission involved in that ownership to the chances of damage incident to he use by each owner of his own land." Whitlock v. Uhle, 426-427. This statute ". . . is a statutory application of the power of an injunction to the prevention of a particular form of mischief." Harbison v. White, supra, 109. This court cannot, in the face of 52-480, accept the "mere sufferance" claim. This court is quick to add, however, that a landowner can use his or her property to advance or insure privacy in this context so long as the structure erected in furtherance of that claim is not maliciously erected under 52-480. The statute, however, "concerns itself wholly with the motive." Harbison v. White, supra 109. The defendants, in effect, claim ". . . that inasmuch as the structure screened their premises from obstruction from persons [at the plaintiff's house], [the defendants] can maintain it." Harbison v. White, supra. As the Harbison court said and is apposite here: "To concede this would be to nullify the statute; for it is not possible for malice CT Page 2423 to conceive any kind or form of structure which would not in some measure protect premises from obstruction." Id. Webster defines "incidental" as "subordinate . . . or attendant in position or significance." Webster's Third New International Dictionary 1142 (1981). The privacy "use",[10] once malice under the statute has been found, must be held incidental. The "absence of any real usefulness of the structure" (see DeCecco v. Beach, supra, 32) means that the use to the defendants, after a finding of malicious erection under 52-480 has been made, is required to be held incidental. "Useless" in this context is, therefore, a term of relative utility and does not mean absolutely useless.
In sum, the plaintiff has sustained her burden of proof of proving that the structure, i.e., the fence, was maliciously erected under General Statutes 52-480 and is entitled to relief.
It is, therefore, ordered that the entire fence be disassembled and removed within thirty days of the filing of this memorandum of decision in the Superior Court Clerk's Office, in the Superior Court for the Judicial District of New Haven at New Haven.
ARTHUR H. HEALEY State Trial Referee