[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON REQUEST FOR INJUNCTION
An injunction action was brought in this case pursuant to § 52-570 of the General Statutes which provides that: "An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injury the plaintiff in his (sic) use or disposition of his (sic) land."
The defendant, Broadway Associates, intends to build a six-foot high masonry wall between its property and that of the plaintiff's which will run the length of the property line from the street to the sea wall. Both the plaintiff's and the defendant's property face the sea to their south. The relief afforded by the statute has been held to apply to the erection of fences.
 I.
The court will first discuss some issues that arise under the statute and which are important considerations in resolving this particular case, and a companion case.
(a.)
Obviously, a heated dispute exists between the parties but, despite the wording of the statute, one factor must be made clear: "Whether a structure was maliciously erected is to be determined rather by its character, location and use than by an inquiry into the actual motive in the mind of the party erecting it." DeCecco v. Beach, 174 Conn. 29, 32 (1977); Whitlock v. Uhle,75 Conn. 423, 427 (1903). The intent to injure according toDeCecco is determined mainly from the fact that the structure does impair the value of the adjacent land and injure the owner in its use, from the absence of any real usefulness of the structure . . . and from the character, location and surroundings of the structure itself. . . ." 174 Conn. at page 32.
(b.)
What is the importance of the privacy interest the person CT Page 6479 erecting a fence seeks to protect in deciding whether equitable relief should be granted? The DeCecco court says that once "malice" is established under the terms of § 52-570 the fact that the fence in that case "also served to protect the defendant's premises from observation must be regarded as only incidental, since to hold otherwise would nullify the statutes." Id. at page 33. The court referred to Harbison v. White,46 Conn. 106, 109 (1878) where after concluding the statutory requirements for granting an injunction against the erection of a fence-like structure had been met, the court went on to reject an argument made by the people who opposed the injunction that "inasmuch as the structure screened their premises from persons occupying the petitioner's house, they can maintain it." This may not mean that under all circumstances, a privacy interest has no bearing on the usefulness of a structure sought to be erected. Clearly theDeCecco court considered it as an important factor, id. P. 36. But it certainly means a privacy claim must be closely scrutinized. Perhaps it is most important in situations where the fence is erected to screen property from offensive activities. Thus, where injunctive relief has been sought against a fence "equitable relief" has been denied where "walls and fences complained of screened a defendant's premises from objectionable noises, odors and unseemly conduct on the plaintiff's property."Welsh v. Todd, 133 S.E.2d 171, 172 (1963), cf Whitlock v. Uhle, supra at 75 Conn. P. 424.
(c.)
Another difficulty to be addressed in applying the statute to the cases before the court is the question of "value" — does the party seeking an injunction have to show that the erection of a structure such as a fence will, in addition to the other necessary elements set forth in DeCecco, also cause a diminution in the monetary value of the adjacent property. An early case stated that one of the necessary requirements for an injunction under the statute is an impairment in value of the adjacent land. Whitlock v. Uhle, supra at 75 Conn. page 426.DeCecco v. Beach supra says that the intent to injure must "impair the value of the adjacent land and injure the owner in its use." 174 Conn. at p. 32 (emphasis added). Harbison v. White
does not specifically mention diminution of value but does note that erection of the structure "would injure the foundations and basement of the block." Id. p. 108 (referring to snow and ice and moisture accumulation which would damage petitioner's block of houses). Rapuano v. Ames, 21 Conn. Sup. 110, 111 (1958) CT Page 6480 specifically refers to the need to show diminution of value.
The difficulty with using value as a separate criteria, however, is that it is hard to conceive of a situation where, when an adjacent land owner shows erection of a fence or other structure establishes that his or her use or enjoyment of land is impaired that there would also not be an impairment of value. Also if such injury to use and enjoyment is shown and it is further found that no useful purpose is served by the structure, do the cases really mean to say that diminution of monetary value is required? Should, the granting of injunctive relief depend on the peculiarities of the real estate market at a particular historical time? What if there is a real harm to use and enjoyment but not enough given the overall value of the property to result in an actual monetary diminution of value? Or to put it another way, what if the use or enjoyment is completely lawful but peculiar to or unique to the present property owner seeking an injunction but not such a use as would commonly be engaged in generally by buyers and thus cause a diminution in value?
Interestingly, although several Connecticut cases talk of the need to show a diminution of value and find there has been such a diminution in the case discussed, they do not refer to actual testimony or evidence showing such a monetary loss but refer chiefly to factors involving the effect on use or enjoyment of the property. DeCecco v. Beach, 174 Conn. at pp. 30-32; Rapuanov. Ames, 21 Conn. Sup. Pp. 112 et seq, see espec Scott v.Wilson, 82 Conn. 289 (1909), which does not even allude to diminution of value in upholding the trial court's enjoining of a six foot fence between two properties; it was a factor that the trial court did not even consider, id. P. 109.
Also, it should be noted that in a thorough article entitled "Malicious Design and Construction of Fence", 22 Am. Jur. Proof of Facts 2d 683, the following note appears: "The fact that a fence has adversely affected the value of the complainant's property, to a substantial degree, is an important factor in the determination whether to abate the fence, in connection with other factors. Welsh v. Todd, 260 N.C. 527, 133 So.2d 171." Similarly, in DeCecco at 174 Conn. Page 31, the Court refers to the need to establish all the "necessary" elements before relief under § 52-570 can be obtained. However, the court refers toWhitlock v. Uhle, supra and, 1 Am.Jur.2d, Adjoining Land Owners. § 111. If sections § 111 and § 113 are examined it appears that generally "Value" is a factor but it is CT Page 6481 not underlined as a factor which, if not proven, would bar injunctive relief even if all the other factors establishing a right to such relief are met. In Powell On Real Property the subject of "Spite Fences" is discussed at § 62.05, pp. 62-45 — 62-51. In this discussion of actions arising out of the erection of fences both at common law and under various state statutes nowhere is the diminution of value of the adjacent land mentioned as a factor to be weighed in determining whether injunctive relief should be available. Of course, common law and statutory relief permits a recovery in damages for the erection of a so-called "spite fence" and with such a claim, diminution in value must be shown but that is a separate question from the issue of whether diminution in value must be shown for injunctive relief.
(d.)
A final general consideration that should be taken into account is the common law context in which statutes such as §52-270 were enacted. In Whitlock v. Uhle, 75 Conn. At p. 426 the court said in enacting our statute "a new exception is made to the absolute power of disposition involved in the ownership of land. ." In other words at common law "When the fence serves a useful purpose, there is general agreement that the motive for erecting a fence . . . is immaterial, even where the injury is caused to a neighbor by cutting off his (sic) light and air and obstructing his (sic) view." Powell on Real Property § 62.05, p. 62-46. The language of the cases seems to imply that under the statute if the fence serves any useful purpose equitable relief is not appropriate — thus, in Rapuano the court reasons that it is difficult to see how an added height of three feet to the fence "serves a useful purpose", 21 Conn. Sup. At p. 113,DeCecco says the sections of the fence "have no use to the defendant under the statute", 174 Conn. At p. 31. On the other hand in Whitlock v. Uhle, there is a glimmer of more flexibility when the court says that the "intent to injure" may be inferred "from the absence of the reasonable possibility of any real advantage, whether of profit, protection, or pleasure, in the use of the land", 75 Conn. At p. 427, that would inure to the land owner who wants to put up the fence.
 II.
The court will now discuss the specific issues presented by this case. CT Page 6482
(a.)
The basis for the Sherman claim for equitable relief is the allegation that if the defendant is allowed to build a six foot masonry wall her view of the ocean and beach from the west side of the house will be almost completely obstructed. Harriet Sherman testified that bay windows were put in a kitchen and back room with the specific purpose of getting an ocean view. At the present time the defendants have a picket fence running from the hedge between the properties to the seawall. This fence allows only a partial view from the side rooms of the house to the ocean but the court finds that between that fence and the defendant home there is an ocean and beach view which would be blocked off if a six foot masonry fence is constructed. Presently a hedge which is on the Sherman property runs to the picket fence between the properties.
The defendant has pointed out that if this masonry wall is erected the Shermans will still have an ocean view from the front of their home and even a side view from the second floor of the house. However relevant such an observation might be in other contexts it is not convincing here. The cases make clear that in deciding these matters the character and location of the property must be considered. These homes are located on the shore. One of the chief attractions of a home by the shore is the ability to have views of the ocean and shoreline. The Shermans have lived in their home fifteen years, they have a grandchild, people often spend a good portion of their time by themselves or as a family in kitchen areas. Mrs. Sherman testified she constructed bay windows with the explicit purpose of affording an ocean view. Interference with a view has often been a factor leading courts to grant equitable relief in these types of cases, Whitlock v.Uhle, 75 Conn. At p. 424, Scott v. Wilson, 82 Conn. At p. 290. Indeed the fact that even with the erection of this wall the plaintiff will have some view left from another portion of the house does not mean that an injunction regarding that fence should be denied. In DeCecco the court granted an injunction dismantling a portion of a fence and was upheld on appeal where the court said: "The plaintiff has a view of the river adjacent to her property on one side but no view of the river on the other side because of the last four sections of the fence closest to the river", 174 Conn. At p. 31. In this regard there are no cut off points in the sense that a fence must be higher than a certain number of feet before injunctive relief can be given CT Page 6483 obviously the issue is whether the view in fact is interfered with by the fence or wall sought to be constructed at a certain given height. The propriety of the height of the fence can be a variable depending on the relative heights of the adjoining properties in relation to each other and the distance between the home whose owners claim an obstruction to their view and the fence and the location of the home on the land of the property owner seeking to construct the fence. It is true, as the defendant has noted, that most of the cases where equitable relief has been granted involve situations where a fence is well over six feet. But in Scott v. Wilson, supra the court listed as one of its reasons why equitable relief was appropriate the fact that the view of the plaintiff was impaired. There, the fence was only six feet high but the view was apparently impaired because it was erected in a residential area between properties only having a frontage of 33 feet. Here, the Sherman house is only about 20 feet from the common boundary where the wall would be constructed and the defendant's house is only 10 feet from that boundary to the west. Thus as in Scott the view is effectively obstructed despite the fact that the fence will only be six feet high. In any event the court finds from the photos presented that the view from the kitchen and back room on the west side of the plaintiff's property would be obstructed by the construction of a masonry wall six feet in height running southerly from a point approximately 6 to 8 feet from the end of the present picket fence. Also, the plaintiff's would lose an entire westerly view of the ocean from that portion of their property running from the front of their house including a grassy and patio area up to the sea wall. The court has cited Connecticut cases that recognize that injunctive relief can be used to protect a view.
Also, other jurisdictions have recognized that the loss of a view in a situation where a view is important to people can be ground for granting equitable relief regarding a fence. Cf Welshv. Todd, supra at 133 So.2d page 172 (court notes fence would obstruct view of Inland Waterway) also see 1 Am.Jur.2d "Adjoining Land Owners", § 62.05, page 646 at footnote 6, "Malicious Design and Construction of Fence", 22 Am.Jur.2d 683, 694, 702, 706-708.
Furthermore given the character and location of these properties the loss of view that would be entailed by the construction of the wall at a six foot height beyond a point six to eight feet from the northerly end of the present picket fence by its very nature would interfere with and impair the CT Page 6484 plaintiff's use and enjoyment of her property. This is after all a seaside home where people build homes to use and enjoy the sea.
(b.)
Mrs. Sherman, as a property owner, testified the value of her home would be diminished if the wall were to be constructed at its six foot height. A real estate appraiser testified for the plaintiffs and he said that the loss of the view from the side rooms of the plaintiff's property resulting from the construction of the wall would depreciate the value of the plaintiff's property from 2% to 5%. He personally examined the property, took several photos and prepared a report. He has been an appraiser for eleven years and is a senior residential appraiser. Interestingly, on cross examination it was further brought out that the value of the house is affected because they have a full view from the portion of the Sherman property in front of their house facing the ocean (Tr. pp 53-54). That is true because the picket fence can be looked through at that location as Mrs. Sherman also testified. If the picket fence were replaced with a six foot wall that westerly view would be lost to anyone less than six feet in height on all that portion of the property from the south edge of the Sherman house.
Questions of value can often be elusive. But the testimony presented that there will be a diminution in value does not defy common sense. If one were to imagine a hypothetical where the Shermans were selling their home at a price they felt was reasonable and competitive given the market, one could certainly envisage that someone showing the home to prospective buyers would tell them as an inducement to buy that these bay windows were put in and would allow them to have a pleasant view of the sea while sitting at the kitchen table in the morning. These considerations operate in the real world to affect value even though they are intangibles but then again traditional market mechanisms to determine value can also be intangible.
(c.)
The defendant is entitled to a reasonable use of its land, however. Thus, even given the foregoing considerations if the construction of the wall would serve a useful purpose equitable relief would not be appropriate. Various matters have been raised by the defendant through the testimony of Mrs. Garafalo who is a general partner regarding the usefulness the wall would have as CT Page 6485 to the use and enjoyment of the property. The property is apparently rented for much of the year but the Garafalo family has spent several weeks at the home every year since it was purchased almost seven years ago. Also, they plan to live at the property on a full time basis and have done extensive building and remodeling to the house. The wall she hopes to construct will have a stucco finish to match the house and she plans to embellish it with roses and other plants. The home is beautiful and appears to be superbly maintained so it is to be expected that the stucco wall facing the defendant's property will be superbly maintained. The court found both Mrs. Sherman and Mrs. Garafalo to be honest people, holding strong views of their rights as property owners. The court does not find and has no basis for concluding that the actions of the defendant were prompted by actual ill will or an intent to harm the plaintiff. However, given the conclusions the court has reached in its previous discussion concerning the effect that construction of this wall will have on the plaintiff's use and enjoyment of the property, the usefulness of the wall to the defendant must be addressed.
A privacy claim is difficult to make here in light of the previous principles relating to the privacy issue in this type of case. There is certainly no claim here that the Shermans or anyone else to the east of the defendant's property is engaging in any type of objectionable or offensive activity that would require a fence of this height. Mrs. Garafalo testified she would like a wall of uniform height to the sea wall but it is difficult to see how that should be an important aesthetic, let alone practical, consideration. In DeCecco itself the trial court ordered a portion of the fence to be of a lower height.174 Conn. at p. 31. This is especially to be regarded only as an incidental consideration given the effect construction of the wall will have on the Sherman view of the sea.
As to any privacy interest served by a six foot high wall by the mere fact that a wall of such height would prevent the Shermans or anyone else from viewing into the portion of the defendant's property between the edge of the defendant's house to the seawall — even if this is a valid consideration under the case law which the court will arguendo assume that it is, it is difficult to give credit to this position. People can travel along what the court can ascertain from the pictures submitted as a fairly thickly populated beach area in an east to west and west to east direction right in front of the defendant's property up CT Page 6486 to the high water mark. And even if the focus is on that portion of the proposed wall to the picket fence, which will block the plaintiff's view from rooms on the side of their house, from those rooms the plaintiff cannot look around into the defendant's front yard nor will they be given an expansive view of the house. Also, people to the west of the defendant's home on the opposite side of the Shermans appear to have a direct view into the property which borders a public entryway into the Laurel Beach area.[1]
Mrs. Garafalo testified that she desired to build cabanas on the eastern side of the house towards the front. She states that the wall is necessary to give privacy to this area. But a zoning variance would be necessary to build these cabanas and none has been applied for to date let alone granted. Also, the whole purpose of a cabana is to provide a self-contained closed area for showering into which no one outside the cabana can look. Thus, no fence or wall is necessary to afford privacy to anyone using the cabana. Presently, there are only outside showers but people only use these to wash off sand in their bathing suits which they wear on a beach open to public view in any event.
Some testimony was presented that the wall would prevent intruders from entering the defendant's property to walk to the beach from the street or to the street from the beach. But the proposed wall would not prevent people from traveling in these North to South directions because it runs in that same direction — cross walls or gates running from a hedge or wall to the defendant house and at right angels to any hedge or wall would be the only means to prevent such intrusions. Also, why would anyone travelling east to west or vice versa be induced to climb the present picket fence or go over the present hedge or a wall less than six feet when they only have to walk along the beach to go in either of these directions?
The defendant also argues that a reason for the erection of the wall is the fact that it would be a low maintenance expenditure. The picket fence has to be repaired frequently. Pictures were shown of broken slats. This argument is somewhat conclusory given the observations already made by the court as to the propriety of erecting a six foot wall to the sea wall as opposed to a four foot wall. In other words, why is the maintenance of a four foot wall more troublesome or expensive than that of a six foot wall given the fact that for considerations other than cost of maintenance a six foot wall CT Page 6487 would be inappropriate and a reasonable object of equitable relief?
Also, the court is at somewhat of a loss in trying to ascertain what weight should be given to the low maintenance cost argument. There are picket fences and there are picket fences. Some are well and securely built; others are not. Some, the court supposes, could be constructed of metal or more substantial wooden planks than those used in the present fence. What is the actual projected maintenance cost of a stucco wall itself and its costs in relation to the annoyance and cost of maintaining the present picket fence or some other type of picket or wrought iron fence, for example, which will not obstruct the plaintiff's view?
The court cannot accept the reasons offered by the defendant as sufficient to deny the injunctive relief requested.
Therefore, injunction relief as required is granted to the following effect: The defendant is enjoined from constructing a masonry wall fence over four feet in height from a point eight feet from the northerly end of the present picket fence to the sea wall.[2]
Corradino, J.