[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 8986
"Before I built a wall," Robert Frost famously said inMending Wall, "I'd ask to know [w]hat I was walling in or walling out." What is being walled in and walled is a matter of great importance in malicious structure cases as well. It has long been held that our malicious structure statutes, Conn. Gen. Stat. §§ 52-480 52-570, apply "[w]here one from pure malice shuts air and light from his neighbor's dwelling." Harbison v. White,46 Conn. 106, 108 (1878). But what if what is being walled out is not light and air but the passage of people across private property? That is the problem in this case.
This case involves the erection of a fence on the boundary between a building and a parking lot in a commercial area of New Haven. The facts are found from the evidence presented at a bench trial held on August 27, 1997.
The parties own adjoining commercial buildings on State Street in New Haven. The plaintiffs, Harold and Jo-Ann Pressman own 930-32 State Street (the "Pressman Building"). The defendant, Kenneth Kraus (his name is misspelled in the caption of the case) owns 934-36 State Street (the "Kraus Building"). The Pressman building is significantly deeper than the Kraus building. The area behind the Kraus Building, also owned by Kraus, is a parking lot fronting Bishop Street. The rear of the Pressman Building contains a door opening onto the parking lot. The position of the properties in question can be illustrated by the following diagram (not drawn to scale):
 __________________________________________________ | | | | | | B | | Parking | I | __|__ Lot | S | Door | H | _____ | O | | | P | | | | |_______________________| S | | | T | | | R | Pressman | Kraus | E | Building | Building | E CT Page 8987 | | | T | | | | | | |__________________________|_______________________| State Street
The Pressman Building was operated as a hardware store from 1945 to 1991. The Pressmans, who operated the hardware store business after 1964, purchased the building in 1984. The hardware store closed in 1991.
Kraus, an architect, purchased the Kraus building and the adjoining parking lot in 1980. The building contains a store (operated as a toy store at the time of the events about to be described), an office (used by Kraus) overlooking the parking lot, and four apartments.
The door from the Pressman building to the parking lot was an overhead door, of the type used in garages, until 1992. In 1992, the Pressmans boarded up most of the overhead door and inserted a smaller standard door in its center. The new door opens out. Although some witnesses testified that the overhead door had been routinely used for commercial deliveries prior to that time, this testimony was not credible and is contradicted by the physical evidence. In 1993, a tree, five inches in diameter and taller than the building, was located directly in front of the boarded-up portion of the overhead door. Kraus credibly testified that he had never once seen the overhead door used for deliveries or anything else since he purchased the Kraus building in 1980. During this time, the door was covered with vegetation. Kraus used the parking lot for his and his tenants' businesses. There were ordinarily four to six cars parked in the lot.
In August 1993, the Pressmans rented the Pressman Building to an adult bookstore. The proprietors of the store soon began to use the door from the Pressman Building to the parking lot for truck deliveries. One truck driver made threatening remarks to Kraus. In response to these developments, Kraus erected the fence that is the cynosure of this case. The fence is located in the parking lot, parallel to the Pressman Building and about one foot away from that building. The exact dimensions of the fence are not in evidence. Photographs in evidence indicate that it is reasonably attractive in appearance and approximately three or four feet high and twenty-five feet long. It does not shut out any significant light, air, or view from the Pressman Building, CT Page 8988 but it does interfere with the use of the door to the parking lot. Its purpose is to keep unauthorized persons and vehicles out of the parking lot.
The fence made it impossible to use the rear door in the Pressman Building because the door, as mentioned, opens out. The fence is sufficiently close that the door cannot be fully extended. It does not appear that alternatives, such as a sliding door, have been fully explored. The New Haven authorities — who were not receptive to an adult bookstore in any event — did not allow the bookstore to be opened because of the problems with the rear door. The lease was broken, and the Pressmans suffered personal economic damages as a result.
The plaintiffs' complaint is pleaded in a single count presenting two different claims. The plaintiffs first claim a prescriptive easement across the parking lot. They additionally claim relief under the malicious structure statutes. Conn. Gen. Stat. §§ 52-480 52-570. For the reasons that follow, the plaintiffs cannot prevail under either of these theories.
As a factual matter, the plaintiffs have failed to satisfy their burden of proof with respect to their initial claim of prescriptive easement. They claim that they acquired a right-of-way from the rear door of the Pressman Building across the parking lot by frequent and regular use of that right-of-way for fifteen years. See Conn. Gen. Stat. § 47-37. In order to prevail on this claim, the plaintiffs must establish that their use of this asserted right-of-way "was open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." Andrzeiczvk v. Advo System, Inc., 146 Conn. 428, 431,151 A.2d 881 (1959). See County of Westchester v. Town of Greenwich,227 Conn. 495, 501, 629 A.2d 1084 (1993). The plaintiffs have not established this factual predicate. Their evidence that their use of the asserted right-of-way was open, visible, continuous and uninterrupted for fifteen years is not credible in light of all the evidence in the case. Their first legal claim must consequently fail.
The plaintiffs' statutory claims can appropriately be considered together. Conn. Gen. Stat. §§ 52-480 and 52-570
allow, respectively, injunctive relief and an action for damages when a landowner has maliciously erected a structure on his land intended to annoy or injure an owner of adjacent land in the use or disposition of that land. These statutes were originally CT Page 8989 enacted in 1867 as part of the same public act, 1867 Conn. Acts ch. 30, and provide relief unavailable at common law. The common elements of the statutory causes of action are: "[a] structure erected on the owner's land; a malicious erection of the structure; an impairment thereby of the value of the adjacent land; [and] an intent by means of the structure to injure the adjacent owner in the enjoyment or disposition of his land."Whitlock v. Uhle, 75 Conn. 423, 426, 53 A. 891 (1903). (A somewhat more elaborate list of elements is set forth in Rapuanov. Ames, 21 Conn. Sup. 110, 111, 145 A.2d 384 (Super.Ct. 1958), but Whitlock remains the leading case on the subject.)
The record in this case is sufficient to establish some of the Whitlock elements. A fence is a "structure" within the meaning of the statute. DeCecco v. Beach, 174 Conn. 29,381 A.2d 543 (1977). The evidence on impairment of value of the adjacent land is somewhat less clear. The plaintiffs have established that they suffered personal economic losses because of the broken lease, but this is different from an impairment of the value of the land. On the other hand, Connecticut courts have used a certain amount of common sense in dealing with this issue and have not required expert testimony involving depreciation in land values. DeCecco and Whitlock are examples of this approach. It is obvious that a fence erected one foot from the rear door of a neighboring building so that the door cannot be fully opened will impair the value of the neighbor's land, at least slightly. The "impairment of value" Whitlock prong is consequently satisfied.
The "intent to injure" Whitlock prong is, however, not established on this record. Whitlock explains that the "real evil" addressed by the statutes is "the erection of a structure which substantially serves, and is intended to serve, no purpose but to injure [an adjoining landowner] in the enjoyment of his land." 75 Conn. at 426. If the structure serves a legitimate purpose, it is not affected by the statutes. Whitlock states that such a legitimate purpose may include a "real advantage, whether of profit, protection, or pleasure, in the use of the land" by the person erecting the structure. Id. at 427. This is to be determined by the character, location, and use of the structure rather than "by an inquiry into the actual motive in the mind of the party erecting it." DeCecco v. Beach, supra, 174 Conn. at 32.
One legitimate purpose identified by Whitlock is "protection . . . in the use of the land." The evidence establishes that the fence in question here serves such a CT Page 8990 purpose. The purpose is the protection of the parking lot from persons and vehicles crossing that lot to reach the rear door of the Pressman Building. By serving this particular purpose, the fence will inevitably injure the adjoining landowners. Without free access through the parking lot, the adjoining landowners will be at least slightly worse off than they would be with such access. That fact does not, however, strip the fence of its legitimate purpose.
This case involves considerations somewhat different from those underlying most "spite fence" cases. The typical case of this description involves the erection of a fence that deprives the adjoining landowner of light, air, and view. It has long been recognized that the our malicious structure statutes may properly be employed in "air and light" cases. Harbison v. White, supra,46 Conn. at 108. The reason for this is twofold. First, as the Supreme Court of Michigan observed in a seminal case, "to the air and light between the earth and the heavens the right of each man is more or less dependent on his neighbor." Burke v. Smith,37 N.W. 838, 840 (Mich. 1888). Second, the typical "spite fence," erected solely to block a neighbor's light, air, and view confers no benefit to the builder other than the gratification of malice. Neither of these rationales is applicable here. This case does not involve the right to air and light. It also involves a substantial benefit to the builder. If there is a substantial benefit to the owner, Whitlock teaches us that the statutes in question do not apply. 75 Conn. at 427.
The fence involved in this case, by cutting off access to the parking lot from the rear door of the Pressman Building, necessarily benefited the owner of the parking lot in the process. If the Pressmans had a right-of-way across the parking lot, the balance of rights involved would be quite different. For reasons already discussed, however, the Pressmans had no such right-of-way. Given this fact, a hypothetical posited long ago by the New York Supreme Court of Judicature is in point.
 Suppose an obliging farmer permits his neighbor to pass and repass through his fields, to go to the lands of that neighbor; if this is permitted for 20 years, it becomes an easement, a right of way, which the owner of the soil cannot infringe; but at the end of ten years, he chooses . . . to shut up this passage, and refuses permission to his neighbor to pass over his lands, as he used to do for ten years past; does an action lie? Most certainly not.
CT Page 8991
Mahan v. Brown, 13 Wend. 261, 264-25 (N.Y.Sup.Ct. 1835). While Mahan has since been rejected with respect to its separate analysis of the right to air and light; Burke v. Smith, supra;
the reasoning of the hypothetical just given remains intact. The protection of the use of land is a legitimate purpose for a fence. Whitlock v. Uhle, supra, 75 Conn. at 427. See Rutka v.Rzegocki, 132 Conn. 319, 43 A.2d 658 (1945) (finding protection of land from surface water to be a legitimate purpose).Absent a statute forbidding it, an owner may completely fence his own land without incurring liability. Leo Sheep Co. v. United States, 440 U.S. 668, 685
(1979); Camfield v. United States, 167 U.S. 518, 528 (1897).
For the reasons just discussed, the "intent to injure" prong of Whitlock is not established by the evidence here. Because no such intent is shown, the structure is not malicious. Whitlock v.Uhle, supra, 75 Conn. at 427. The plaintiffs, consequently, are not entitled to the statutory relief they seek.
The plaintiffs do not claim that the fence in question is a nuisance. See Whitlock v. Uhle, supra, 75 Conn. at 426. They are not entitled to relief on any of the causes of action that they claim. Judgment must therefore enter for the defendant.
Jon C. Blue Judge of the Superior Court